[No. 6284.]

JOHNSON ET AL. v. THE STERLING IRRIGATION COMPANY.

Appeals—Questions Not Presented Below—Insufficiencies in the complaint may not be urged on appeal, where, in the court below it was treated as sufficient, and evidence as to the matter alleged to have been omitted from its averments was received without objection.—(483, 484)

In a controversy between the owners of ditches situated in different water districts, as to each of which a statutory decree adjudicating his priority had been awarded in his district, it appeared that the cause was tried below as though no such decrees had ever been entered. Held, that the questions determined in Fort Lyon Co. v. Arkansas Valley Co., 39 Colo. 332, were not presented upon an appeal from the final decree.—(489)

*Error to Logan District Court*—Hon. E. E. ARMOUR, Judge.

Mr. H. N. HAYNES for plaintiffs in error.

Messrs. ALLEN & WEBSTER for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Defendant in error owns the Sterling ditch, the headgate of which is located a few miles southwest of the town of Sterling. This ditch takes its supply of water from the South Platte river. Plaintiffs in error are the owners of ditches located about thirty-five miles further up that stream, and take their supply of water from that source. A dispute arose between these several owners with respect to their rights to the waters of the stream, and the defendant in error, plaintiff below, brought suit against the plaintiffs in error, as defendants, the purpose of which was to have settled and determined the relative priorities of right to divert water from the common source of supply through their respective ditches.

It is not necessary to give the pleadings in detail, it being sufficient to say that the parties to the action treated them as presenting for determination the question, which of the respective parties to the action had the prior right to the subject-matter of controversy, or what were their relative rights therein. A referee was appointed, with power to take testimony and report findings of fact, and a decree. After hearing the testimony, the referee reported his findings of fact, and the form of a decree, which were substantially adopted by the trial court, and a decree entered, adjudging plaintiff entitled to 113.9 cubic feet of water per second of time, as of date July 15, 1873. The defendants have brought the case here for review on error.

It is suggested by their counsel at the outset that the complaint is insufficient in that it nowhere states how much water was actually diverted into plaintiff's ditch and applied to a beneficial use. That question does not appear to have been raised below, and at the trial testimony on behalf of plaintiff as to the volume

of water actually diverted through its ditch, and bene-
ficially applied, was received without objection, so that
defendants are estopped from raising the sufficiency
of the complaint in the particular named, for the
reason that it was treated by all parties to the action
as sufficient with respect to the defect now suggested
for the first time.

The contention of defendants is stated in the
brief of their counsel as follows:

"1.    113.9 second feet decreed by trial court is
much more water than was ever, or can be, diverted
and distributed by the Sterling Ditch for beneficial
uses.    Eighty, or at most 90, second feet should be
treated as aggregate of appropriations effected by
said ditch.

"2.    The appropriation made by Sterling Ditch,
dating by relation as of 1873, is less than one-third
of its present carrying capacity.    Twenty-five second
feet of any date prior to 1885 fully covers any appro-
priation made through that ditch in its early history.

"3.    A second priority, dating from about the
year 1885, for about 30 second feet more, is all the
evidence shows was appropriated through that ditch
prior to 1895.

"4.    A third priority of the difference between
55 second feet and present efficient distributing capac-
ity of Sterling Ditch should be fixed as late as 1895.

"5.    The first two priorities, 25 second feet as of
1873, and 30 second feet as of 1885, should be limited
in use as against plaintiffs in error to the early part
of the irrigating seasons.

"6.    Defendant in error, because of its *laches,*
is not entitled to recognition as a senior appropriator
to plaintiffs in error, but should be limited to the
accretions coming to the river below their headgates
at all times of scarcity of supply of water in Water
District No. 1."

The referee was engaged for nearly thirty days in taking testimony. As transcribed in the bill of exceptions, it covers more than 2100 folios; as abstracted, it embraces about 320 printed pages. All the questions of fact which the referee resolved in favor of plaintiff, of which the defendants complain, were determined from this mass of testimony; and the main contention of counsel for defendants, in brief, is, that the evidence does not support the findings of fact made by the referee, and upon which the decree finally entered was based. To give even a brief synopsis of the testimony of the respective witnesses is not only impracticable, but would in no sense aid in reaching a conclusion on the questions urged upon our attention. Upon every issue involved, except two, it was conflicting.

It is conceded by counsel for defendants that the construction of plaintiff's ditch was commenced long prior to the time when any of the ditches belonging to the defendants were constructed. That water was also diverted through the ditch of plaintiff and applied to the irrigation of lands before lands were irrigated by means of ditches constructed by defendants, is likewise conceded. On all other issues the testimony was conflicting—that is to say, the dimensions of plaintiff's ditch, its carrying capacity, the volume of water actually diverted thereby, and when diverted, the length of time during each irrigating season water was diverted and used; and if the volume awarded plaintiff's ditch was not diverted and used during low water stages, why not; the number of acres of land irrigated under plaintiff's ditch; the diligence employed in constructing that ditch and extending it, and bringing lands under cultivation; whether or not the defendants and their predecessors had, in the interim, made such appropriations as would entitle them to priorities in part in advance of

that awarded the plaintiff; whether there had been such an acquiescence by those taking water through the ditch of the latter in the diversion of water by defendants through their ditches as would operate in part to estop the consumers under plaintiff's ditch from insisting on the full priority in date and volume awarded plaintiff; in short, all controverted questions of fact relevant to the issues between the parties were determined by the referee in favor of plaintiff, upon conflicting testimony.

In addition, after all the testimony was introduced, the referee, at the request of both parties to the action, personally examined the lands under the Sterling ditch for the purpose of ascertaining the area under cultivation irrigated from that source. From the conflicting testimony bearing on the issues between the parties, aided by his own personal inspection made at the instance of all parties, the referee found:

"The carrying capacity of plaintiff's ditch is 113.9 second feet and no more, and it has had that carrying capacity since its completion as originally constructed. The work of construction of said ditch was commenced on July 15, 1873, and was prosecuted with reasonable diligence until completion, save that in the year 1884 the ditch was extended for several miles in order to bring some new lands under cultivation. While some new lands were brought under this extension, and water was thereafter applied to their irrigation through and by means of this extension, the irrigation of other lands lying nearer the head of the ditch from this ditch was discontinued. Within a reasonable time after the completion of this ditch, as aforesaid, water was diverted by means thereof from the South Platte river to the amount of 113.9 second feet, and beneficially applied by users and consumers of water from said canal to the irrigation

of land, and the amount of water so diverted has at all times during the irrigating season, when water was in the river in that quantity to supply this ditch, been used for the irrigation of lands lying thereunder, and the same was appropriated with intent to use it during the entire irrigating season whenever needed for the irrigation of agricultural lands.   *   *   * There has been no abandonment of the appropriation or water rights incident to plaintiff's ditch.   *   *   * Neither plaintiff nor its water users and consumers have, by acquiescence, inactivity, nonuse of their appropriations, or otherwise, induced defendants or any of them to believe that it, or they, had abandoned any part of its or their appropriation to the right to the use of water from the South Platte river, either as to amount, time of use, or priority.''

Counsel for defendants call our attention to testimony which controverts these findings; but, on the other hand, there is ample testimony of equally probative force to sustain such findings. It was the peculiar province of the referee to weigh and consider this conflicting testimony and ascertain the true facts, and in as much as the findings he returned were substantially approved and adopted by the court, and are amply sustained by the testimony, they cannot be disturbed on review.

It is contended by counsel for defendants that the Sterling ditch never has had a headgate, as required by statute. What the evidence may strictly establish on this proposition, we do not regard as of very material moment. The ditch did have appliances by means of which water was diverted from the stream. The character of such appliances would only be material in considering the question of the volume of water diverted through the ditch; but as there was ample testimony to sustain the findings of the referee on this subject, the mere absence of such

headgate as the statute requires does not affect the rights of the parties on any question involved in this case.

It is also urged upon our attention that the test of the capacity of the ditch to carry water consisted of a measurement of the water flowing therein, turned into the ditch through the Springdale ditch heading higher up the river, and from thence diverted into the Sterling ditch. We cannot see how this should result in changing the findings of the referee on the subject of the volume awarded the Sterling ditch. The testimony is undisputed that by this test the volume actually flowing in the ditch was a little more than was awarded by the decree; but that it was caused to flow in the ditch through a channel other than its own headgate would only be material in considering the volume of the diversion which the ditch was wont to make. As already stated, the testimony on this subject, independent of the two matters just considered, is ample to sustain the volume awarded the Sterling ditch.

It is also insisted on behalf of defendants that the rights of the Sterling ditch should be limited to high water stages and accretions below the ditches of defendants in low stages. In other words, the contention is that the Sterling ditch appropriation should not attach when the water in the river is at a low stage, except as to such volume as finds its way back into the stream from the diversions by the ditches of the defendants. The referee found that the volume awarded the Sterling ditch "has at all times during the irrigating season, when water was in the river in that quantity to supply this ditch, been used for the irrigation of lands lying thereunder"; so that the rights of the consumers under the Sterling ditch, as fixed by the final decree, were based upon the ground that the appropriation awarded that ditch

was not only made in advance of defendants', but was actually applied to lands during the entire irrigating season, which would cover the period when there would be low as well as high stages of water in the river. Consequently, when the water flowing in the river was insufficient to supply the appropriations of all the parties, the appropriation of plaintiff must first be satisfied. If the volume of water necessary to supply plaintiff's priority should reach a point in the river opposite the headgate of the Sterling ditch, and, because of the low stage of water and the imperfect appliances of the ditch, water in the stream could not be turned into the ditch, it may be that plaintiff could not require the defendants to permit additional water to flow down the stream in order to satisfy the priority awarded the Sterling ditch; but that question is not before us. The decree, however, protects the defendants in this respect.

It appears that the respective ditches of the parties are in different districts, and the referee found that statutory adjudications had been had in these districts. It also appears from the referee's report that certain priorities under these proceedings were awarded the respective ditches involved. The referee concluded, as a matter of law, that the awards thus evidenced were *prima facie* correct.

It appears that these findings and conclusions in no way affected the rights of the parties to this action. The volume of water awarded the Sterling ditch was much less than that fixed by the statutory adjudication. The case was commenced and tried and the rights of the parties adjusted, without objection on their part, as though no such proceedings had ever taken place, so that the questions determined by this court in *Fort Lyon Canal Co. v. The Arkansas Valley S. B. & I. L. Co.*, 39 Colo. 332, are in no sense involved.

We fully appreciate the importance of this case as bearing on the rights of the respective parties. It, of course, would be a legal wrong to take from the defendants and give to the plaintiff any part of the subject-matter of controversy to which the former are entitled. The converse of this proposition is also true. To settle and determine the rights of the respective parties was the object of the action commenced by plaintiff. All parties recognized and treated the action as appropriate for this purpose. They tried and prosecuted the action to final judgment, and as the judgment and decree rendered settle these rights in an action which they selected and treated as proper to this end, on findings of fact fully supported, as we have said, by the testimony, all parties to the action must accept the decree as correct.

The judgment of the district court is affirmed.

*Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.