[No. 6454.]

## THE WELDON VALLEY DITCH CO. ET ALS., V. THE FARMERS PAWNEE CANAL CO.

1. WATER RIGHTS—*Adjudication of Priorities*—The owner of a ditch, in order to be entitled to a decree settling its priority must show its construction, a diversion of water from the stream, the carriage of the water through the ditch, and a beneficial application of the water to the land—(547).

2. ——*Application to Beneficial Uses*—The test of beneficial use of water for irrigation, and the extent of such use, is not the area irrigated in each year—(549).

The irrigation of a newly settled farm in the public domain is a continuing process, requiring a number of years. The settler may excavate his ditch or purchase a water right, in anticipation of what will be required to irrigate the whole of his plantation, and so apply and use the water that when the right has ripened he will have sufficient to irrigate the whole— (549).

But no beneficial use can be made of a larger volume than is necessary to irrigate the land to which it is applied—(550).

3. ——*Bill to Settle Appropriation of Ditches in Different Water Districts.*

In a proceeding to establish and settle the relative priorities and amounts of appropriations between ditches in different water districts, the amount decreed to one of the ditches held excessive—(551).

4.    PRACTICE IN THE SUPREME COURT—*Questions Not Presented Below*—When the parties agree in the court below as to the propriety of the form of action, and the theory of the cause, they are bound thereby in the court of review—(547).

5.    EVIDENCE—*Judicial Notice*—It seems that the court will judicially notice the volume of water necessary to irrigate eighty acres of land; and that forty-seven cubic feet of water per second of time, is not required for the irrigation of six hundred and forty acres.—(550).

*Error to Logan District Court*—Hon. E. E. ARMOUR, Judge.

Mr. H. N. HAYNES, for plaintiffs in error.

Messrs. ALLEN & WEBSTER, for defendant in error.

Mr. JUSTICE GARRIGUES delivered the opinion of the court:

This case involves the same general subject and object of litigation as *Johnson v. Sterling Co.*, 49 Colo. 482; namely, to settle the relative priorities and amounts of appropriations of ditches in different water districts of the South Platte river. District 1, comprises that portion of the stream from the mouth of the Cache la Poudre river, to the west boundary of Washington county; district 64, the remainder of the stream from the west line of Washington county to the east line of the state. The priorities of all the ditches in these two water districts were settled by statutory decrees, and each district had its own independent adjudication decree long before the bringing of this suit. Logan county was settled prior to Morgan, and the ditches in district 64, for convenience called the Sterling ditches, generally speaking, are senior in priority to the ditches in district 1, for convenience

called the Fort Morgan ditches.  Plaintiff is a Sterling ditch, and defendants in the main, are Fort Morgan ditches.  The ground of complaint is, that ignoring the seniority of plaintiff's canal in district 64, defendants in district 1, in times of scarcity, take all the water, and prevent it flowing to plaintiff's ditch.  It is treated as an appropriate proceeding in the nature of a bill of peace in equity, to quiet plaintiff's title, to adjudicate its priority as against defendants' priorities, and establish and settle the relative priorities between ditches in the different water districts.  The right to maintain the action is conceded and both sides prayed for similar relief.  Indeed, defendants say they were about to commence an action, but plaintiff forstalled them by instituting this proceeding.  The decree settles the priorities of the ditches and commands the water commissioners of districts 64 and 1, to distribute the water in accordance with its terms. Defendants complain that excessive amounts were awarded to the Pawnee ditch, and this is the only question we will consider.  All that was said in *Johnson v. Sterling Co.*, relative to the parties selecting the action and agreeing on the theory of the case, applies equally well here.  It is not an action to change a settled priority on the ground of subsequent abandonment.  It is a proceeding to settle the priorities of ditches in different water districts.  A ditch owner to be entitled to a decree settling its priority for irrigation, must show its construction, a diversion of water from the stream, carriage through the ditch, and a beneficial application of the water to the land.  The court then settles the water right belonging to the ditch, by a decree establishing the date and volume of its appropriation.  In this case it fixed the first appropriation of the Pawnee ditch at 47 cubic feet per second, date or priority, September 17, 1873; and

the second appropriation at 150 cubic feet per second, priority dating June 22, 1882.

The canal was originally called the Buffalo ditch. The Buffalo Townsite Company constructed it about a mile and a half or two miles from the river, to the old grade of The Colorado Central Railway Company. The original plan, which was abandoned, was to build a ditch about fifteen miles long, to irrigate some 5,000 acres. Commencing June 22, 1882, the ditch was built or enlarged, and extended about 25 miles, by The Pawnee Ditch and Improvement Company, which constructed it in part along, over and through the ditch, route and right of way of the Buffalo ditch, to cover some 30,000 acres of land, and named the Pawnee ditch.

In 1873 or '74, four settlers each made entry to 160 acres of government land, at or near the end of the Buffalo ditch, and constructed extensions or laterals from it to irrigate their tracts. The water was beneficially applied on no other lands; these were all the lands they owned under the ditch; and they were all the land owners and users of water from the canal until after the construction of the Pawnee ditch, June 22, 1882. This beneficial use of the water by them upon these four places from 1874 to 1882, is, or should be the basis of the first appropriation of 47 cubic feet per second; and the construction of the Pawnee ditch in 1882, and the subsequent use of the water down to the time the ditch was turned over to plaintiff, is, or should be the basis of the second appropriation of 150 second feet.

Up to 1882, these settlers had not cultivated and irrigated the whole of their tracts. Defendants contend the highest aggregate number of acres irrigated by them any year during this time, should be the basis of the first appropriation of the ditch. This undoubtedly should be considered, but it does not de-

termine the matter in this case. It is impracticable, if not impossible, for a settler to seed and irrigate 160 acres of sod breaking a year. Settlers on the public domain are usually poor men, and cannot do this all at once, even if it were possible. It is a continuing process requiring a number of years. A private ditch is constructed or a water right acquired in a ditch by a land owner, with a view to obtaining sufficient water to irrigate his whole farm; but one settling on 160 acres of raw land, would not think of buying enough water to irrigate that amount of sod breaking a year.

In this case, each settler could beneficially use such an amount of water that when the right ripened, he would have sufficient to irrigate all his land. He could build his ditch, or buy his water right in anticipation of this amount, and it would be a beneficial use of the water to apply it on any portion of the land needing it. The test is not necessarily the number of acres irrigated each year. If these tracts were farmed, and all the water necessary to irrigate them was beneficially used with reasonable diligence in the improvement of the land, it is sufficient. What was a sufficient amount of water, and was it applied to a beneficial use, is the test.

The owners of the Pawnee ditch sold eighty acre water rights of 1.44 cubic feet per second, for the irrigation of the land under the ditch, and the water was accordingly divided among the consumers on that basis and applied to the lands. It is the basis of the second appropriation. Its sufficiency is not questioned. If 1.44 cubic feet per second is sufficient to irrigate 80 acres under the Pawnee ditch, it is some evidence of the amount needed for the irrigation of these lands. This is the basis upon which water rights were procured for, and applied to the land under the ditches generally, in northern Colorado, and subsequent use

and experience, has demonstrated that that amount is ample.

The court apparently based the first appropriation upon the amount of water carried through the canal, and not the amount necessary for the irrigation of the land, applied to a beneficial use. The complaint, on the same line, ingenuously alleges that the ditch was originally constructed twelve feet wide on the bottom, with a capacity of 100 cubic feet per second, and capable of irrigating 5,000 acres of land. Admitting all this, the ditch might not be entitled to any decree. We have endeavored to show these settlers could not make a beneficial use of more water on the tracts than was necessary for their irrigation. It is immaterial whether the Buffalo ditch was ten, twelve, or fifteen feet wide on the bottom, or whether it was capable of irrigating 5,000 acres of land and was filled to its capacity. Anyone familiar with irrigation, knows that 47 cubic feet of water per second is not necessary for the irrigation of 640 acres of land. That amount, therefore, was not beneficially applied thereto.

There is evidence that the loss in distribution from seepage and evaporation will be of no consequence, while some of the witnesses put it as high as twenty-five per cent. Allowing the ditch 11.52 cubic feet per second, as the necessary amount, beneficially used, for the irrigation of the land, and adding to this, twenty-five per cent for the loss in carriage, the first appropriation of the ditch should be 14.40 instead of 47 cubic feet per second.

2. The second appropriation is based on the use made by holders of eighty acre water rights, from 1882 until the ditch was taken over by the plaintiff in 1898. During this time the ditch was operated by the owners, who sold and distributed the water in rights of 1.44 cubic feet per second for the irrigation of an eighty acre tract. During the time mentioned, only 70 of

these rights were sold and used on the lands. The land owners and water right holders, could only beneficially apply to the land the necessary amount of water in this case, represented by these contracts. The use of the aggregate water rights made by them upon the land, constitutes the second appropriation of the ditch. Counsel for defendants contends they did not at any time receive and use this amount of water. The evidence upon this point is conflicting. The court, however, awarded 150 feet, which is clearly excessive. Seventy eighty acre water rights of 1.44 cubic feet, make 100.8 cubic feet, add to this the twenty-five per cent for loss in carriage, and the result, 126 cubic feet, is the proper amount. The case is reversed and remanded with directions to the district court to amend its former decree or enter a new one, establishing the first and second appropriations of the Pawnee ditch in accordance with this opinion. No other changes will be made, and each party will pay their own costs.                    *Reversed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE WHITE concur.