[No. 3509.]

LARIMER COUNTY CANAL No. 2 IRRIGATING CO. ET AL. v. POUDRE VALLEY RESERVOIR CO. ET AL.

1.   EVIDENCE—*Sufficency.*   Petitioners claiming to be entitled to a certain share of the waters of an irrigating ditch known as the Canon Ditch, produced evidence sufficient, *prima facie*, of their title to the volume of water claimed.

Evidence was produced that at an early period the individual consumers from the ditch had incorporated a company; that in the proceedings for the adjudication of priorities to the use of water in that district the claim filed with the referee was in the name of that corporation, and signed and verified by its president, and that the ditch was designated, in the decree, by the name of that corporation.   But there was no evidence of any conveyance to the corporation, and there was definite proof that the corporate organization was abandoned, and no stock ever issued as representing an interest in the ditch, or otherwise.   Held not sufficient to dispel the *prima facie* case made by the petitioners.

2.   —— *Judicial Notice.*   It will be judicially noticed that fifty-six cubic feet of water per second of time is not necessary for the irrigation of less than three hundred acres of land.

3.   WATER RIGHTS—*Adjudication of Priorities—Construction of Decree.*   From the statement of claim in the proceeding for the general adjudication of priorities in the water district it appeared that the land under petitioner's ditch, and intended to be irrigated therefrom, was only two hundred and seventy-five acres.

The decree assumed to award to them fifty-six cubic feet per second of time, a volume greatly in excess of what was necessary for the irrigation of such an area.   Upon petitioner's application to change the point of diversion of the whole fifty-six second feet, *Held,* that the case called for a construction of the original award to petitioner's ditch, and that, as affecting the interest of appropriators below them, it gave the

owners of petitioner's ditch only water sufficient to irrigate three hundred acres of land.

4. WATER RIGHTS—*Change of Point of Diversion.* Petitioners showed apparent title by the general decree for the district, adjudicating the priorities to the use of water for irrigation, to fifty-six second feet. They applied for leave to change the point of diversion of this volume of water to another ditch much higher up, of greater capacity and length than that in which the water had previously been carried, and to apply the same to a much larger area of lands than that ever previously irrigated. No part of the water thus diverted would return to the stream above the headgates of the appropriators below them, who were opposing their application. It appeared that the petitioners and their predecessors in title had never used, in the irrigation of their lands, more than one-tenth of the volume adjudicated to their ditch. All the residue passed down the stream to consumers below them. Held, that only as to the volume of water necessary to properly irrigate the area of lands which had previously been irrigated from petitioner's ditch should petitioners be allowed the change.

5. —— *Change of Point of Diversion—Rights of Other Appropriators to be Protected.* An appropriator is not to be allowed to change the point of diversion of the water to which he is entitled in such way as to injure other appropriators; and a decree which is susceptible of a construction which will accomplish such result, under any view of the case, should be so modified as to make it clear that this is not its purpose or effect.

The other appropriators, so possibly affected to their injury, should not needlessly be left to seek relief in another proceeding; but their rights should be settled and made clear while all parties are before the court.

6. APPEAL—*Judgment.* Where necessary for the protection of any of the parties to the litigation, the court below may be directed to hear additional testimony.

*Appeal from Larimer District Court.* HONORABLE JAMES E. GARRIGUES, Judge.

Messrs. RHODES, TEMPLE & FOSTER, for appellants The Larimer County Canal No. 2 Irrigating Co., The New Mercer Ditch Co., and The Arthur Irrigation Co.

Mr. H. N. HAYNES, for appellants The Larimer & Weld Irrigation Co., and The New Cache la Poudre Irrigating Co.

Mr. C. D. TODD, Mr. JOSEPH C. EWING, for the appellees.

On rehearing:

KING, J., delivered the opinion of the court.

The appellees filed their petition in the district court, under the act of 1903 (Session Laws 1903, p. 278), praying for an order allowing them to change the place of diversion of certain rights, claimed to belong to them, in the decreed priorities of what was called the Cañon Canal Company's ditch, from the headgate of that ditch to the headgate of the Poudre Valley canal, owned by petitioners, both of those ditches taking water from the same river. The Cañon Canal Company's ditch, or Cañon canal, as it is usually designated in the record of the present proceeding, was designated as No. 20, in the general decree adjudicating the relative priorities of right to the use of water for irrigation purposes in that water district, which was entered in the year 1882, and by that decree said Cañon canal was adjudged to be entitled to priority No. 28, by original construction, computed at 8.6 cubic feet per second of time, and also priority No. 55 (changed by amendment of the decree in 1884 to No. 56), by reason of enlargement, computed at 48.8 cubic feet per second of time, in all 57.4 second-feet. The petitioners claimed to be the owners (the nature of their interests, as between themselves, being immaterial here) of 1.63 second-feet of priority No. 28, and 24.44 second-feet of priority No. 56, in all 26.07 second-feet, of the water so decreed to the Cañon canal. The appellants who were the owners of certain priorities, as adjudicated by said general priority decree, of later date than those of the Cañon canal, protested against the granting of the relief sought by petitioners, claiming that the vested rights of the protestants would be injuriously affected

by the proposed change. The decree of the court found the issues in favor of the petitioners, and unconditionally ordered the change in the place of diversion of 26.07 second-feet of the water decreed to Canal No. 20, or Cañon canal, that is, 1.63 second-feet of priority No. 28, and 24.44 second-feet of priority No. 56, and the delivery of that much water, according to the priorities stated, to the petitioners' Poudre Valley canal, at its headgate. From that decree this appeal was prosecuted.

The Cañon canal was substantially parallel with the Poudre Valley canal, between it and the river, the headgate of the former being located about two thousand feet down the stream from that of the latter. The first named canal or ditch appears to have been a small affair, not exceeding three miles in extreme length, and being at no point more than one-half mile distant from the river. The Poudre Valley canal was sixteen or more miles in length, of large carrying capacity, and had been constructed to convey water to a large reservoir, at a great distance from the river. It had no decreed priority for irrigation purposes, except in connection with the storage reservoir. There was no headgate of a ditch taking water from the river, and no tributary or source of water supply affecting the flow of the stream, intervening between the headgates of the two canals.

Appellants' first objection to the decree challenges the sufficiency of the proof of appellees' ownership of the proportion of the decreed priorities of the Cañon ditch, allowed by the decree in the present proceeding to be diverted to the Poudre Valley canal. In so far as part ownership of the decreed priorities depended upon the ownership of the ditch, it seems that the contentions of appellants' counsel in that regard are not sustained by the evidence. The ditch appears to have been con-

structed in 1868, and subsequently enlarged in 1873, by certain individuals, who had land claims along the ditch, and claimed ownership of it in different proportions, or undivided interests, so that technical accuracy in proving title of record to the various interests could hardly be expected. However, the petitioners produced record evidence in support of their claim to the rights included in their petition, consisting of several mesne conveyances. Their title immediately rested upon a deed conveying, in connection with certain land, the proportion of the decreed priorities of the Cañon canal claimed by them in. this proceeding, the grantor in that deed having apparent title by recorded conveyance to a one-half interest in the ditch; and certified copies of the deeds to petitioners' more remote grantors were introduced, which seemed to convey rights and interests in the ditch, and which were recorded more than twenty years before this proceeding was commenced. It appeared that the immediate predecessors in title of the petitioners exercised acts of ownership and possession of the ditch, used water therefrom upon their lands, for the period of about twenty years prior to 1904, when the flume which carried the water of the ditch across a certain cañon was washed out by flood, rendering part of the ditch useless. It does not appear that the ditch was thereafter utilized, although during two seasons some part of the water supposed to belong to it was turned into the Poudre Valley canal. There was testimony tending to show that the right of the petitioners and their grantors to the rights claimed by them in the Cañon ditch were recognized by others having interests in that ditch and its priorities. On the whole, the evidence was sufficient to establish petitioners' *prima facie* right to the one-half interest in the Cañon ditch, except as to that part of the priority numbered

not conveyed to or claimed by them, for the purposes of this proceeding, and in the absence of evidence of adverse title or claim.—*Bates v. Hall,* 44 Colo., 360.

The attempt was made to cast doubt upon the petitioners' proof of title by showing that, at an early period, individual owners of the Cañon ditch had incorporated a company known as The Cañon Canal Company of Colorado, and that the ditch was designated in the decree adjudicating priorities as The Cañon Canal Company's canal; and further, that the claim filed with the referee in that proceeding was made in the name of the corporation by one who signed and verified the claim as its president. The last named person appears to have been one of the original owners of the ditch, but not one of petitioners' grantors. Nevertheless, there was no evidence whatever of any conveyance to the corporation; while there was definite proof to the effect that the corporate organization was never completed, but was abandoned by the incorporators, and that no stock of the corporation was ever issued, as representing any interest in the ditch, or otherwise. The decree in the statutory proceeding to adjudicate priorities did not and could not determine the ownership of the ditch. It cannot be said that the abortive attempt at incorporation was enough to overcome the *prima facie* evidence of title produced by petitioners.

The further and principal contention of appellants is, that their vested rights as junior appropriators will be injuriously affected by the change in the point of diversion if granted unconditionally in accordance with the terms of the decree appealed from. They have not at any time protested against a mere change in the point of diversion from the head of the Cañon ditch to the head of the Poudre Valley canal, under restrictions as to use, but have at all times insisted that under such change as

prayed for, combined with change in place of use, serious and permanent injury to their interests will result, unless the decree allowing the change be upon such terms and conditions as will prevent such injurious effect and protect the appellants therefrom. This attitude of appellants is proven by their written protest, which, among other things, stated that the quantity of water claimed by petitioners, had at no time, when diverted into the Cañon canal, been used to irrigate to exceed 274 acres of land thereunder; that such land was near, and sloping to, the river, so that any quantity in excess of 5 second-feet of water diverted into the ditch returned at once to the river; and, ''That the proposed change of point of diversion sought in the petition will injuriously affect these objecting parties and their respective consumers, unless the decree sought by petitioners be modified and limited to application of water so sought to be changed as to place of diversion, to the same lands, to-wit, 274 acres of land lying along and near said Cañon canal, heretofore irrigated by means of said portions of said priorities''; as also by a statement of their counsel on motion for rehearing, that a decree should be directed authorizing diversion into the Poudre Valley canal of no more water than is necessary to irrigate those lands of petitioners which were purchased with the water-rights, and perhaps also such additional lands as lie between the Poudre Valley canal and the Cañon canal, not to exceed 5 second-feet.

Appellants make particular and specific objection to the form of the decree allowing the change of point of diversion, for that, the water commissioner is thereby ''directed and required to divert said water annually into the Poudre Valley canal *whenever needed and required by petitioners to irrigate their lands,* in the same manner as though said 26.07 second-feet of water had been de-

creeded to the Poudre Valley canal in the general adjudication proceedings of 1882''; it being contended that it is not only the effect of said order, but was the intention of the trial ·court, to preclude investigation in any subsequent action as to enlarged use in time and volume, under the new conditions. Appellants' contention of injurious effect is based mainly upon two claims. The first is that because of the greater length of the canal, and its location, by reason of which the acres capable of irrigation, and to be irrigated therefrom, are increased to several times that under the Cañon canal, the change of the point of diversion of the priorities of the Cañon ditch to the Poudre Valley canal will result in the application of the waters represented by said decreed priorities (as construed by appellees and the trial court) to a largely increased acreage, thereby taking from the river a greater quantity of water, both as to volume and time, than ever had been used by petitioners or their grantors, or could be used beneficially, by means of the smaller ditch, and that the change in place of use will necessarily prevent the return of any of such waters to the stream. The second claim is that, by its terms and the law under which it was rendered, the decree in the general adjudication proceedings, properly interpreted and construed, gave to the Cañon canal and the owners of its priorities, no right to the use of more water than necessary to irrigate the amount of land lying under the ditch, intended to be and susceptible of being, and which were, within a reasonable time after the completion of the ditch and the rendering of said decree, irrigated therefrom; and that the trial court refused to so construe the said decree.

No extended statement of the evidence is necessary, or would be useful. The undisputed facts are that under the Cañon ditch, as originally constructed and since

maintained, not to exceed 300 acres of land could be beneficially irrigated; that such land lay in a narrow strip, at no place exceeding one-half mile in width, between the ditch and the river, and with such slope that all water turned into the ditch and not consumed, must of necessity be quickly returned to the river above the headgates of appellants' ditches. Application of water to any larger area of land was prevented by the topography of the country. Of this acreage, the evidence tends to show that not to exceed 274 acres have, at any time, been irrigated. From these facts it is plain that the junior priorities, owned by appellants, have not at any time been affected to a greater extent than that occasioned by the consumptive use of the water on said small area of land under the Cañon ditch and near the river, as the entire amount claimed by appellees and their grantors under said decree, when turned into the ditch, returned to and became a part of the stream and was appropriated by appellants, except the small amount required for and consumed in the irrigation of said land. Direct and undisputed testimony as to the quantity of water that could be beneficially used upon the land was given by one of the water commissioners, who stated that if $8\frac{1}{2}$ second-feet of water were turned into the ditch from the river, it would be possible to use it on the lands thereunder, but he would consider it an excessive use. Another witness, water commissioner at the time of the hearing and for many years prior thereto, testified in substance that if 56 second-feet were used in a ditch to cover only 270 acres, the water would be in the river available to junior appropriators practically all but six or seven days of the year; but if turned into petitioners' ditch, unless it should break, the river would be deprived of that water absolutely, during the irrigation season.

It was well said by Mr. Justice Garrigues in *Weldon*

*v. Farmers Co.,* 51 Colo., 545, 550, that "anyone familiar with irrigation knows that 47 cubic feet of water per second is not necessary for the irrigation of 640 acres of land. That amount, therefore, was not beneficially applied thereto." With greater force may it be said in this case that anyone familiar with irrigation knows that 56 cubic feet of water per second is not necessary for the irrigation of the tract of less than 300 acres of land under this ditch, could not have been beneficially used thereon, and if turned thereupon, under the physical conditions shown to exist, would soon return to and become a part of the stream subject to appropriation by appellants as if it had never been diverted from the stream. Appellees' ditch has a carrying capacity much greater than that of the Cañon canal. It extends about 25 miles, terminating in a large reservoir, and in its course empties into other such reservoirs, the first of which is situated about 12 miles from the head of the ditch. In addition to the lands purchased with these priorities, petitioners have 1,200 acres upon which they will use these waters for irrigation, several hundred acres of which lie above the high water line of the reservoirs, and therefore cannot be irrigated from stored water. No portion of the water turned into that ditch can return to the river above the headgates of appellants' ditches, or any of them, with the exception of such as may return if used in the irrigation of the lands formerly irrigated from the Cañon ditch. Appellees' witness testified that if the water diverted into this ditch should be applied to irrigate not only the acres under the Cañon ditch, but also the lands adjacent to the reservoirs, the enlargement of the consumptive use will depend upon the amount procured from the river. But without such direct testimony, the inference that such would be the case, is not only deducible, but inevitable. So far as disclosed by the evidence, there

is such an intimate, inseparable connection between the change in point of diversion, and the change in place of use, and storage, that injurious enlarged use is as certain and inevitable as the operation of the laws of gravitation in obedience to which the water once diverted into the ditch of petitioners, and guarded by its protecting banks, will follow its descending grade miles beyond the place or places at which appellants have heretofore gathered and used it, and beyond their reach, until in its full volume and at all times it will be consumed upon largely increased acreage of thirsty land, or garnered into a succession of storage reservoirs.  At the original place of diversion the quantity of water that could possibly be consumed in beneficial uses, was limited by physical conditions to about one-tenth the quantity of the priority decree, as asserted by petitioners, and to less than one-fourth of that which they now claim; while by the change in the point of diversion, these physical limitations and restrictions are removed.  Both the ability and intention of petitioners to consume the entire quantity are admitted.  Nothing appears to be lacking to establish and make certain the injurious effect to appellants' vested rights, within the meaning of the law, and nothing to prevent it except the imposition of terms as provided by the statute under which this proceeding was instituted, or denial of the petition.  We think the evidence in this case brings it fairly and fully within the rule announced in *Vogel et. al. v. Minnesota Canal Co.*, 47 Colo., 534, in which the supreme court, by Mr. Justice Bailey, said:

"This court has often said, in substance, that a junior appropriator of water to a beneficial use has a vested right, as against his senior, in a continuation of the conditions on the stream as they existed at the time he made his appropriation.  If this means anything, it is that when the junior appropriator makes his appropria-

tion he acquires a vested right in the conditions then prevailing upon the stream, and surrounding the general method of use of water therefrom. He has a right to assume that these are fixed conditions and will so remain, at least without substantial change, unless it appears that a proposed change will not work harm to his vested rights.''

The facts, as shown by the evidence in the case just cited, differ from those in the instant case in some respects; but the judgment there appealed from and sustained was based almost entirely upon the finding that the proposed change would interfere with return waters, and in the use of waters of the stream at such times as petitioner's grantors had not used the entire volume awarded by the priority decree, during the irrigation season; and the evidence does not present as strong a case as found in this record. This branch of the case will be further considered in connection with the second claim. So far, we have discussed the question conceding that the priority decree to the Cañon ditch gave it the right to 56 second-feet, absolutely, for the irrigation season, as claimed by appellee.

Appellees contend that the quantity of water, the point of diversion of which may be changed, is that determined by the adjudication decree itself (*Cache la Poudre Co. v. Supply Co.*, 49 Colo., 1; *Wadsworth D. Co. et al. v. Brown*, 39 Colo. 57; and that such quantity is the volume named in the decree, and for the entire irrigation season. While appellants claim that the volume only is fixed, the time being indefinite, to be determined and limited to the needs of the acreage for which the water was appropriated, and further, that the decree relied on does not award the quantity of water claimed, and invoke a construction of the decree. The priority claimed by appellees under the decree, is so grotesquely out of proportion to the quantity of water which was, or might

be, beneficially applied to lands capable of being irrigated by the ditch, as to justify a construction of the decree to ascertain its true intendment and meaning. One and forty-four one-hundredths second-feet for 80 acres of land is the basis upon which water-rights were procured for and applied to lands under the ditches, generally, in northern Colorado, and subsequent use and experience has demonstrated that such amount is ample.— *Weldon v. Farmers Co.,* 51 Colo., 545, 549. In water district No. 38, one second-foot to 50 acres (*Drach v. Isola,* 48 Colo., 134), and in district No. 40, one foot to 40 acres (*Crawford-Clipper D. Co. v. Needle Rock D. Co.,* 50 Colo., 176) is the maximum allowed by the decrees; and in the case last named it is shown that subsequent use and experience has demonstrated that one second-foot is sufficient to irrigate 53 acres in that vicinity. From the statement of claim upon which the decree in question was founded, it appears that the land under the ditch intended to be irrigated therefrom was 275 acres; and the evidence herein shows that at no time since the decree has there been to exceed 300 acres under the ditch which could be irrigated therefrom. Under these facts, the decisions of the supreme court in *New Mercer D. Co. v. Armstrong,* 21 Colo., 357, and *Drach v. Isola, supra,* are applicable and controlling. The decree now under consideration is the identical decree construed in the *New Mercer Ditch* case, and similar to that construed in *Drach v. Isola,* and contains the same general provision limiting the several specific awards as to quantity. In the first case it was held that although the decree appeared to give to the Yeager ditch 33 cubic feet of water per second of time, nevertheless, by its terms, and the general law read into every decree, it gave to Yeager only sufficient water with which properly to irrigate 120 acres of land, the acreage set out in the statement of

claim, and the maximum irrigated from said ditch, after the decree was rendered, to-wit, 3½ cubic feet per second. Appellees contend that neither of these cases apply for the reason that abandonment was the issue upon which the same were decided. In the first case the court said that, whether it adopted the finding of abandonment, or held that the decree itself gave only sufficient water with which properly to irrigate 120 acres of land (both of which conclusions were affirmed), "in either case, or in both cases, as to the quantity of water decreed to Yeager, only such portion thereof as has been used by him * * * within a reasonable time after the original diversion can now be enjoyed by him or his grantees." In *Drach v. Isola,* the court said that the question of abandonment was not there involved, and that the suit, which raised the same question as to the meaning of the decree as is here insisted upon, was not an attack upon the decree, but an attempt to enforce its provisions. In *Crawford-Clipper D. Co. v. Needle Rock D. Co., supra,* in construing a decree somewhat similar to this, Mr. Justice White said: "As the absolute right established could lawfully be based only upon the application of the water to a beneficial use, the right decreed must be measured thereby. This was the extent of the court's authority in the premises, and the decree being susceptible of that construction, such must be the meaning ascribed to it." Upon the authority of these cases, we hold that, as affecting the interests of the parties to this proceeding, the adjudication decree to the Cañon ditch gave to the owners thereof only sufficient water with which properly to irrigate 300 acres of land, and that the quantity which may be diverted by petitioners at the headgate of the Poudre Valley canal must be limited to that amount.

It is contended by appellees that the question of enlarged use is not a proper issue in the statutory pro-

ceeding for change of point of diversion, and in support thereof they cite *New Cache la Poudre Irr. Co. v. Larimer & Weld Reservoir Co.*, 25 Colo., 144; *Seven Lakes Res. Co. v. New Loveland, etc., Land Co.*, 40 Colo., 382; *Platte Valley Irr. Co. v. Central Trust Co. et al.*, 32 Colo., 102; *Fulton Irr. D. Co. et al. v. Meadow Island Irr. Co.*, 35 Colo., 588, and *New Cache la Poudre Co. v. Water S. & S. Co.*, 49 Colo., 1, in which it held that whether the place of diversion may b changed is not to be determined by the manner of use,  r by the quantity of water employed, or the length ( time which the same is to be enjoyed after changing rom the headgate of one ditch to that of another. But that rule is carefully qualified by the statement that if the evidence shows that the changed conditions necessarily, or by reasonable inference, would result in an enlarged use, the petition should not be granted.—*Cache la Poudre Co. v. Supply Co.*, 29 Colo., 469; *Bates v. Hall*, 44 Colo., 360, 371. We do not herein depart from the rule thus established by many decisions of the supreme court, but adhere thereto. This is not a case in which the same volume of water decreed to be used at one point is sought to be changed to another point, and used at a new place, and upon increased acreage for the same time as theretofore, but a greater volume for a longer time, and with no return to the stream. This demand, the decree appealed from, grants; from which, injury to appellants must necessarily result under the facts as here disclosed. We are not unmindful of the decisions of the supreme court which hold that an order permitting a change in point of diversion does not, and cannot, in any way, enlarge the right of its recipient by conferring upon him the power to divert a greater quantity of water from the stream than he theretofore took, nor permit him to use it for a longer length of time than he was previously entitled to; but thereafter in some ap-

propriate proceeding, the question of the quantity of water, as measured by time or volume, can be determined, and that the general law of the state reads into all these decrees allowing change of the point of diversion, the exception and limitation that the change so allowed is not thereafter to become a source of injury, and that any attempt to use it in such a way as to injure other appropriators would still be within the control of the proper courts, and is a continuing protection to such appropriators. But appellants contend that the decree here rendered not only precludes a subsequent suit, but was so intended. The decree is susceptible of that construction, and under any view of the case, it ought to be so modified as to make it clear that such is neither its purpose or effect, nor the law, as understood by the court. Litigants should not needlessly be sent from court to court in search of an appropriate proceeding, but their rights should be settled when the parties are before the court. Such is the policy of the law, and we perceive no obstacle thereto inherent in this proceeding. The former opinion will be withdrawn, the judgment reversed and the cause remanded to the district court, with instructions to ascertain and determine the quantity of water necessary to properly irrigate the land owned by petitioners heretofore irrigated from the Cañon ditch, and also that lying between the line of the Cañon ditch and the Poudre Valley canal, in all not to exceed 300 acres, and to enter a decree permitting the change in point of diversion of that quantity only; and, if necessary, that additional testimony be taken to ascertain such quantity.

*Reversed and Remanded.*

Decided June 10, A. D. 1912. Rehearing granted October 14, A. D. 1912. Decided on rehearing January 13, A. D. 1913.