## No. 9106.

## NEW-BRANTNER EXTENSION DITCH COMPANY v. KRAMER ET AL.

1. CONTRACT—*For Waters of an Irrigation Ditch—Construed.* Certain individuals being the owners of a ditch and the right to the water conveyed thereby, agreed with others (1) that a corporation should be organized for enlarging the ditch (2), that the corporation after leaving in the ditch a specified volume, to which it was agreed the original owners were entitled, should have and enjoy the "residue and remainder" of the waters carried through the ditch, as enlarged, and might take and use the same at its pleasure. The corporation having enlarged and extended the ditch, so that an addition of some six thousand acres of land were irrigated, and the volume of water diverted and carried proportionately increased, *held* that where any of the original proprietors failed to use the full volume to which he was entitled, the water so not availed of were "the residue and remainder" granted to the corporation that the contract granted not only a right of way for the additional volume required by the enlargement of the ditch, but also all the waters not consumed by the original proprietors, within the limit of their right.

2. WATER RIGHT—*Right of Appropriator.* The appropriator may apply the volume of his appropriation to other lands than those upon which it was first applied, or may sell it to others.

3. CONSUMERS UNDER COMMUNITY DITCH—*Rights of.* May, by agreement regulate the use of the water among themselves upon the lands under the ditch.

4. EVIDENCE—*Judicial Notice Taken,* that no consumer under a ditch uses the water constantly; that lands under irrigation require less water as time goes on and that more scientific methods of irrigation afford a greater saving of water, and a greater area of irrigation, than that upon which the right accrued.

5. APPEAL AND ERROR—*Judgment.* Where the rights of all parties are made fully apparent by the record reversal upon error will not involve a new trial. The judgment will be reversed and a decree directed in accordance with the doctrine of the opinion.

*Error to Denver District Court, Hon. Charles C. Butler, Judge.*

Mr. JOHN T. JACOBS, Messrs. GOUDY, TWITCHELL & BURK-HARDT, Mr. H. R. KAUS, for plaintiff in error.

Mr. CHARLES J. BLAKENEY, for defendants in error.

Mr. JAMES A. MARSH, Mr. F. N. SANBORN, for the City and County of Denver.

THE original construction of the old Brantner ditch taken out of the South Platte River, immediately west of Brighton, for the irrigation of certain river bottom lands, was begun in 1860. It was then one and a half miles long, and, in 1863, two miles more were added, and, in 1872, it was extended to about six miles in length. This is spoken of as the old Brantner ditch. Eight settlers then owned the water rights and the ditch. A right was a one-ninth interest, and was intended for the irrigation of 160 acres of land. Seven of the original owners had one right each, and one had two rights, making nine rights, and eight consumers. Like most of the early ditches, it was not incorporated, they were tenants in common, and it was owned and managed as a co-operative ditch for the purpose of supplying these early settlers with water. February 12, 1880, the right owners entered into a written agreement with other settlers and neighbors below the end of the ditch who wanted to enlarge and extend it, to irrigate their lands. The latter represented promoters of a mutual ditch corporation, called the Brantner Extension Ditch Company, which was organized for this purpose. The contract

was executed by the right owners, as parties of the first part, and by representatives of the proposed corporation, as parties of the second part. It recites that first parties own the ditch and water, that second parties desire to use the ditch and its right of way to procure water for irrigation for themselves and associates. In consideration of the premises, second parties agree that, before April 15, 1880, they will properly repair the ditch and put it in good condition for use during that season, and before May 15th will enlarge it to carry 60 feet of water, measured by multiplying the width of the ditch by the depth, all of which was to be done at their expense. First parties grant to second parties a right of way through the ditch after such enlargement to carry as much water for irrigation as they may desire, up to the full capacity of the ditch when enlarged. The contract provides further that, after leaving in the ditch 2,592 in. of water for the nine rights, so that each right owner, during the irrigating season, when water is flowing through the canal, can take on each right, at all times, not less than 288 in. of water for each ninth interest, the residue or remainder of the water carried through the ditch shall belong to second parties, and may be taken, owned and used by them as they may desire by an extension of the ditch. After the enlargement, the expense of maintenance of the old ditch must be borne in the ratio of 9/30 by first parties and 21/30 by second parties.

In February, 1880, the Brantner Extension Ditch Company succeeded to all the rights of second parties under the contract. It was a mutual company in which the water, by agreement, except the original rights, was divided *pro rata* upon the stock. The corporation immediately put in proper repair and enlarged the old ditch to a carrying capacity of 111.18 cu. ft. per second, and, in 1881, completed fifteen miles of extension for the irrigation of 5,000 or 6,000 acres of additional land, at an expense of some $30,000, and, during 1882, a year before the ditch adjudication decree was rendered, irrigation under the entire ditch system was general.

The immediate possession, control, operation, management, superintendence and supervision of the entire ditch system was turned over to the Extension Company. It employed a superintendent and ditch riders in policing the ditch, and distributing the water, and had the full management, direction, maintenance and operation of the entire ditch as enlarged and extended, delivering the water for twenty-nine years to its stockholders *pro rata* on their stock, and to the right owners, from the old ditch, on the contract, without controversy.

In the original general adjudication proceeding, three years after the execution of the contract, the company filed its statement of claim, headed "Statement of Claim of Brantner Ditch, Now Brantner Extension Company's Ditch," which was signed and verified by the secretary of the company and by one of the original right owners, wherein it claimed "All water said ditch and its extensions will carry by reason of its original construction and several enlargements and extensions to the full capacity of said original construction and by reason of the respective enlargements and extension," on which claim, and evidence in support thereof, the ditch was decreed four priorities in 1883 as follows:

Priority No. 1, April 1, 1860,   29.77 second feet,
Priority No. 4, May 1, 1863,    5.93 second feet,
Priority No. 27, July 2, 1872,  12.18 second feet,
Priority No. 52, Jan. 15, 1881,  63.30 second feet,

_____

111.18 second feet.

Since then all the decreed appropriation, when available during the irrigating season, has been diverted and applied to a beneficial use in the irrigation of crops under the entire ditch system. At times, the right owners did not need or use all the preference rights, and the unused portion flowed onward down the ditch, and was distributed to the stockholders of the corporation; that is, there has been no abandonment of any portion of the appropriation.

The life of the original corporation expired by limitation

in twenty years, and the New Brantner Extension Ditch Company, plaintiff below, plaintiff in error, was incorporated and succeeded to all its rights.

In 1909, twenty-nine years after the contract was entered into, a number of defendants served written notice on plaintiff that they were negotiating the sale and transfer of what they called surplus water in the old Brantner ditch to the Fulton Ditch Company, which resulted in the filing of this suit October 25, 1909.

Motions to strike and a demurrer were sustained and plaintiff electing to stand upon the complaint, the case was dismissed. We reversed the decision of the lower court (see 57 Colo. 218) and remanded the case, with directions to reinstate the stricken matter and overrule the demurrer. Issues were then joined, and the case was tried in 1916. The court found in favor of defendants, and it is here for a second review.

Garrigues, C. J., after stating the case as above, delivered the opinion of the court:

For convenience, we treat defendants below the same as the original owners of the old Brantner ditch, and as parties of the first part, and plaintiff below as second parties to the contract, to avoid repeating "successors in interest."

1. This action involves the use of priorities awarded the Brantner ditch, and is a contest between the preference right owners, under the contract, and the stockholders, over the use of the water awarded the ditch. The complaint is predicated upon plaintiff's construction of the contract that it grants an interest in the use of the water, as well as the right of way, and the object of the suit is to ascertain that interest and quiet title thereto. Defendants claim, and the court below held, that it granted only a right of way through the old Brantner ditch. It is admitted that priorities Nos. 1, 4 and 27, amounting to 47.88 cu. ft. per second, are based upon appropriations made by the old settlers, and the lower court, in effect, held that plaintiff's stockholders have no interest in, and are entitled to no part of, this water. The point of diversion has always remained the

same, and there has been no greater diversion either in volume or point of time than decreed the ditch, and no abandonment. One hundred and eleven and eighteen one-hundredths second feet were awarded the whole ditch, generally, for irrigation after the enlargements and extension, unlimited in time, for the benefit of those entitled to the use thereof, and one object of this suit is to determine plaintiff's right to the use, and to quiet the title.

2. Plaintiff is entitled, when needed, to divert all the ditch appropriation for irrigation upon the lands under the whole ditch system. There is no limit in the decree confining the use to any section of, or upon any lands under, or to any length of, the ditch. The water has been used since the decree indiscriminately for twenty-nine years upon all the lands under the ditch, except that defendants have had the first call or preference right to the use of the reserved water to the extent of their necessity, and the residue has been used by plaintiff. It is well known that no consumer under a ditch like this uses water constantly. At such times as there was no use or need for its use by defendants upon their lands under the old ditch, plaintiff used, and was entitled to use, the remainder or residue, that is, the water not used or needed by defendants. In other words, the parties to this suit absorb the entire appropriation; when defendants' necessities are supplied, plaintiff is entitled to the use of the remainder. The part decreed the ditch and flowing therein, after sufficient has been distributed to defendants for the proper irrigation of their lands lying under the ditch when the contract was executed, is the residue or remainder.

3. The decree of the lower court was necessarily based upon a finding that nothing was granted by the contract, except a right of way through the ditch. This is not in harmony with what we said in the 57th Colo. 218, 41 Pac. 498, Ann. Cas. 1916-B 1225, where we held that the residue or remainder was conveyed to plaintiff by the contract, and remanded the case for the lower court to ascertain and define that residue, and quiet title thereto. It found that

the volume of the first three priorities was reserved under the contract. Even if this be true, under the construction we placed upon the contract, such part of the reserved water, regardless of the aggregate volume reserved, as was not used or needed by defendants on the land under the ditch, was the remainder or residue and was granted to plaintiff. This residue we said was conveyed by the contract, and we did not remand the case for the purpose of determining whether the use of the remainder had been granted. That was settled by the former decision.

4. Counsel for defendants in error argue a number of points trying to uphold the action of the lower court, one of which is that the law prohibited the granting of the use of the residue or remainder. This, if the law, is but a general declaration not applicable to the facts of this case. We have defined what is meant by the residue or remainder of the reserved water, and the contract, for a valuable and sufficient consideration, grants the residue of the reserved water to plaintiff, to be taken, owned and used as it might desire. Three years later, after plaintiff enlarged the ditch and constructed the extension, and was in possession of all the ditch, and the use of the residue, it was claimant wherein the ditch was awarded an appropriation of 111.18 second feet for irrigation use generally, not for any particular acres, or to any length of the ditch, or to any set of users, but to the whole ditch system. After the entry of the decree, when the ditch superintendent called for the water, the water commissioner diverted into the river headgate, in the order of the decreed priorities, the appropriations decreed the ditch, and plaintiff used all the water diverted into the ditch, except that used by defendants. Defendants can not complain now, because they, by contract, three years before the decree, placed limitations upon their rights which granted the residue to plaintiff. That consumers from a co-operative or mutual ditch may regulate the use of the water among themselves by agreement, upon the lands under the ditch has often been decided.

Another point argued is that the use of the water appro-

priated by means of the old ditch is limited by law to the land upon which the appropriation was originally made, and that its application to additional acres under the extension constitutes an enlarged use of the appropriation in quantity or time. As hereinbefore stated, the decree is for general irrigation, with no limitation, excepting that of waste, upon the time of the use or the acres upon which the water may be applied. The ditch, under the decree, was entitled to divert all its decreed appropriation, when obtainable and needed for irrigation. There would be times when defendants would not need to exercise their preference rights to the use of all the water reserved, and when not required by them their lateral headgates would be closed, and the water flow onward for the use of others down the ditch. This, we said, was the remainder which, under the contract, was granted to plaintiff. It is well known that since the entry of the early decrees in this state, the old irrigated lands require less water, and improvements in the construction of ditches, and more scientific methods of irrigation, have made possible a greater saving of water, so that the water of the early decrees may be applied upon a greater acreage than that upon which the right ripened. It would be an insular policy that would curtail the use of water, not abandoned, to the acres and kind of crops that were grown when the early appropriations were made. The decree is necessarily conclusive that there had been no abandonment of the first three priorities at the time the contract was signed. An appropriator, after the right has ripened, if there has been no abandonment since the decree, may apply the water to other land than that upon which the first application was made, or sell it to others who may apply it to other lands; that such a transfer is legitimate has been so many times decided by us that it requires no citation of authorities.

Another point argued is that to allow plaintiff to use the residue would be putting the appropriation to a double use or a double duty. The doctrine of double duty does not limit the use of the decreed appropriation to the lands un-

der, or to the length of, the ditch, as it was originally constructed.   Water decreed a ditch for general irrigation is not confined to the land upon which the right ripened, and if not abandoned subsequent to the decree may be applied to new or additional lands.   *Weldon Valley Ditch Co. v. Farmers' Pawnee Canal Co.,* 51 Colo. 545, 119 Pac. 1056; *Arnold v. Roup,* 61 Colo. 316, 157 Pac. 206.

In mutual ditches where there are divers owners, at times some will only use part of their water, at other times not any, and the unused water flows on down the ditch for the use of others, which permits of the irrigation of a larger number of acres than that upon which the right ripened. This is not putting the water to a double duty.

It is also argued that the lower court found that plaintiff, under the agreement, was required to leave in the old Brantner ditch at all times for use of defendants 2,592 in. of reserved water.   This would be impossible except in the sense that we have interpreted the contract; that is, that the water must be taken from the flow in the ditch as it passes the lateral headgates, and that the remainder or residue not used or needed by defendants would pass down the ditch and may be used by plaintiff's stockholders.   The contract and the subsequent decree involved running water which defendants had the right to use up to a maximum amount, and plaintiff is obliged to keep this maximum volume flowing in the canal for their use when it can be obtained upon the decreed priorities, and is needed, but this does not mean that defendants are obliged to take it, or that plaintiff is obliged to turn it out to them regardless of their needs.

The court wholly ignored the grant of the residue, and its findings are based on the theory that the contract granted nothing but a right of way, whereas, it not only granted a right of way and all the incidents thereto, but the right to enlarge the ditch and carry water through it to the limit of its capacity when enlarged, and the control and management thereof, and the residue of the water after defendants' necessities were supplied.

There is no need of a retrial of the case.   The judgment

of the lower court is reversed, and the case is remanded with directions to enter a decree in accordance with the views herein expressed.

Reversed and remanded.

*En banc.*

Decided May 5, A. D. 1919.   Rehearing denied July 7, A. D. 1919.